UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICHARD LEE JOHNSON,

        Plaintiff,

v.                                                                Case No.  8:11-cv-1555-T-23AEP

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and Supplement Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, I recommend the Commissioner's decision be affirmed.

**I.**

### A.       Procedural Background

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 109-17).  The Commissioner denied his claims both initially and upon reconsideration (Tr. 57-60).  Plaintiff then requested an administrative hearing (Tr. 77-78).  Per his request, the ALJ held a hearing at which Plaintiff appeared with counsel and testified (Tr. 18-56).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denying Plaintiff's claims for benefits (Tr. 6-16).  Subsequently, Plaintiff requested review from the Appeals

Council, which the Appeals Council denied (Tr. 1-3).  Plaintiff then timely filed a complaint with

this Court (Dkt. No. 1).  The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C.

§ 1383(c)(3).

### B.      Factual Background and the ALJ's Decision

Plaintiff, who was born on June 3, 1964, claimed disability beginning on January 1, 1999

(Tr. 109, 114).  He later amended his disability onset date to January 31, 2006 (Tr. 21).  He has

a high school equivalency education (Tr. 25).  His past relevant work experience includes work

as a cashier and kitchen helper (Tr. 15, 25, 52-53, 145-60).  He alleges disability due to bipolar

disorder and symptoms of fatigue, stress, frustration, nervousness, anger, irritability, depression,

memory problems, and concentration difficulties (Tr. 13, 135).

After conducting a hearing and reviewing the evidence of record, the ALJ determined

Plaintiff had the following severe combination of impairments: renal cysts, low back pain,

hyperlipidemia, bipolar disorder, history of alcohol abuse, history of drug abuse, and tobacco

addition (Tr. 11).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not

have an impairment or combination of impairments that met or medically equaled one of the

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 11-12).  The ALJ then

concluded that Plaintiff retained a residual functional capacity ("RFC") to perform a full range

of work at all exertional levels involving simple, routine tasks and occasional contact with the

general public, supervisors, and with other employees (Tr. 12-15).  In formulating Plaintiff's

RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although

Plaintiff's medically determinable impairments could reasonably be expected to produce the

symptoms alleged, Plaintiff's statements as to the intensity, persistence and limiting effects of those symptoms were not credible to the extent that they were inconsistent with the RFC (Tr. 14-15).   Considering his noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could perform his past relevant work as a kitchen helper (Tr. 15-16).   Accordingly, the ALJ found Plaintiff not disabled (Tr. 16).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.   These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.   20 C.F.R. §§ 404.1520, 416.920.   If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.   20 C.F.R. §§ 404.1520(a), 416.920(a).   Under this process, the ALJ must determine, in sequence, the following:   whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits

the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

The ALJ, in part, decides Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims.  *See* 20 C.F.R. §§ 404.1501, *et seq.*  These Regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment, but may not be severe enough to prevent him from engaging in other substantial gainful activity.  In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled.  These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." 20 C.F.R. at § 404, Subpart P, App. 2.  If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled.  20 C.F.R. §§ 404.1569, 416.969.  If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only.  20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.

Plaintiff argues here that the ALJ erred (1) by failing to afford the appropriate weight to the medical opinions, (2) in determining Plaintiff's residual functional capacity ("RFC") and

posing an inappropriate hypothetical to the VE, and (3) by failing to make a proper credibility determination.  For the reasons that follow, I find that the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

> ### A.   Medical Opinions

In assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization.  20 C.F.R. §§ 404.1527(c), 416.927(c).  For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive.  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).  Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive.   20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).   Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004).  Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).  In fact, the ALJ may reject any opinion when it supports a contrary conclusion.

6

*Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

In rendering his decision, the ALJ considered all of the medical evidence, including the opinions of Plaintiff's treating physicians and the state agency medical consultants (Tr. 15).  The ALJ afforded little weight to Dr. Bharminder Bedi's April 13, 2007 opinion that Plaintiff's bipolar disorder constituted a permanent disability and that Plaintiff would be "better off" applying for disability and working only part time, as the ALJ found the opinion vague and internally inconsistent as well as inconsistent with the record as a whole (*id.*).  With respect to the remaining treating sources' opinions and the state agency medical consultants' opinions, the ALJ afforded great weight as he found each opinion consistent with the other opinions of record and the record as a whole (*id.*).

Plaintiff contends that the ALJ improperly afforded little weight to the opinions of Plaintiff's treating medical sources and instead substituted his own opinion for those of the medical experts.  Specifically, Plaintiff argues that the ALJ improperly afforded little weight to Dr. Bedi's opinion, erroneously afforded great weight to the opinions of the state agency medical consultants, and consistently discounted any opinions that conflicted with his own opinion.  First, as the ALJ's decision explicitly indicates, he afforded great weight to all of the medical opinions, except for Dr. Bedi's, as all of the other opinions were consistent with one another and with the record as a whole (Tr. 15).  Plaintiff's contentions that the ALJ afforded little weight to the opinion of any treating sources, with the exception of Dr. Bedi, and discounted any opinions that conflicted with his own are therefore completely without merit.

As to Dr. Bedi's opinion, the ALJ properly found that the opinion was vague and

internally inconsistent.  In April 2007, Dr. Bedi stated the following:

> [Plaintiff] has been advised by the social worker to apply for disability because he can only work part time and he has some difficulty handling the job.  He has been doing the part[-]time work for a long time without having any manic episodes or being aggressive, suicidal or depressed.
>
> He is not abusing any drugs or alcohol. He is staying sober and clean.
>
> Without the medications, [Plaintiff] has a tendency to get angry, impulsive.  So I think his bipolar disorder is a permanent disability, so maybe he will be better off applying for disability and work only part time.

(Tr. 285).  Dr. Bedi failed to explain the medical evidence supporting and the rationale underlying his opinion or elaborate as to why he believed Plaintiff's bipolar disorder constituted a permanent disability in light of the fact that Plaintiff's condition was controlled by medication.  Instead, Dr. Bedi merely offered the conclusory opinion that Plaintiff could only work part time and suffers from a permanent disability.  As Dr. Bedi failed to offer any evidence or explanation in support of his opinion, the ALJ was not required to afford significant weight to such a vague opinion.  *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).  Moreover, the ALJ was not required to afford any deference or significance to Dr. Bedi's opinion as to disability because the determination of disability is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d), 416.927(d); *see* SSR 96-5p, 1996 WL 374183, *2 (July 2, 1996) (finding that treating source opinions on issues that are reserved to the Commissioner, such as whether a claimant is disabled, are never entitled to controlling weight or special significance).

Furthermore, and as the ALJ noted, Dr. Bedi's opinion that Plaintiff was disabled is inconsistent with his own treatment records.  Indeed, in July 2006, Dr. Bedi reported that Plaintiff

was doing well, was stable, had coping skills with the help of medications, knew how to deal with the public, and could help himself (Tr. 292). Dr. Bedi found that Plaintiff was not delusional, psychotic, or paranoid and did not act out, had no agitation, had no mood swings, had adequate judgment arguments, had good hygiene, and had a fairly good mental status at that time (*id.*). Following that, in September 2006, Dr. Bedi found Plaintiff did well on his medications and had no psychosis, acting out, agitation, or mania and had appropriate mood and affect, adequate insight, adequate hygiene, and good eye contact (Tr. 291). Dr. Bedi's November 17, 2006 progress note indicates that Plaintiff was pleasant and cooperative and had intact judgment arguments, good hygiene, appropriate mood and affect, no acting out, no agitation, and no paranoia or hallucinations (Tr. 288). Indeed, Dr. Bedi found that Plaintiff's underlying bipolar disorder was in remission at that time (*id.*). Similarly, after conducting a psychiatric evaluation on January 26, 2007, Dr. Bedi found that Plaintiff had done well under Dr. Bedi's care for approximately the past four years; had been working at Burger King and managing it well; had done very well with medications but without medications got irritated, anxious, moody, hyper, impulsive, and very angry; and had no paranoia, no acting out, no agitation, no hallucinations (Tr. 287). Dr. Bedi also noted that Plaintiff used to abuse alcohol and use drugs, but had done well with medications, was compliant with his medications, and had been clean and sober for a number of years (*id.*). Dr. Bedi further noted that Plaintiff was pleasant, cooperative, and calm with adequate memory, adequate judgment arguments, and good eye contact (Tr. 289). Furthermore, Dr. Bedi's treatment notes from February 23, 2007, indicate that Plaintiff was doing well; was better on his medications; was pleasant and cooperative; and was not being impulsive,

moody, angry, or frustrated (Tr. 286). As Dr. Bedi's treatment and evaluation notes demonstrate, Plaintiff's mental impairment does not rise to the level of disability. Accordingly, Dr. Bedi's opinion that Plaintiff was totally disabled as a result of a bipolar disorder is inconsistent with Dr. Bedi's own records and therefore not entitled to significant weight. Based on the foregoing, the ALJ properly considered Dr. Bedi's opinion, afforded it the appropriate weight, and his decision is supported by substantial evidence.

Moreover, the opinions of the state agency medical consultants provide further support for the ALJ's decision. As the regulations provide, the ALJ must consider the findings and opinions of non-examining state agency medical consultants, who are considered experts in the context of Social Security disability evaluation. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). In rendering his decision, the ALJ considered the opinions of the state agency medical consultants and afforded them great weight as their findings were consistent with the medical evidence of record. Indeed, as the record indicates, the state agency medical consultants found Plaintiff suffered from bipolar disorder but that he appeared mentally capable of performing routine, repetitive tasks and had only moderate limitations in maintaining social functioning, concentration, persistence, and pace (Tr. 301-18, 323-40). These findings comport with the findings of Dr. Bedi, although not his opinion of permanent disability, and the other evidence of record. As such, the ALJ properly considered the opinions of the state agency medical consultants and afforded them great weight.

### B.  RFC and Hypothetical

Plaintiff next contends that the ALJ failed to include all of Plaintiff's limitations,

especially limitations from his mental impairments, in the RFC assessment and subsequently failed to include those same limitations in the hypothetical posed to the VE.  At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  To determine a claimant's RFC, an ALJ makes an assessment based on *all* of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms.  *Phillips*, 357 F.3d at 1238; 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e) 416.945(a).

Here, the ALJ determined that Plaintiff retained the RFC to perform a full range of light work at all exertional levels involving simple, routine tasks and occasional contact with the general public, supervisors, and other employees (Tr. 12).  This RFC is consistent with the limitations set forth in the medical evidence of record.  For instance, state agency medical consultant Dr. Carol Deatrick found that Plaintiff showed some deficits in concentration, persistence, and pace and may have difficulty with complex tasks but appeared able to perform routine, repetitive tasks (Tr. 317).  Dr. Deatrick found that Plaintiff was capable of very basic socialization despite his allegations of anger and irritability and that Plaintiff's adaptive skills were essentially intact (*id.*).  Accordingly, Dr. Deatrick opined that Plaintiff was mentally capable of routine tasks with some reduction relating to social requirements (*id.*).  Similarly, state agency medical consultant Dr. Martha Putney found that Plaintiff had a moderate decrease in social and sustained attention but was able to understand and remember work procedures and instructions, be cooperative and appropriate, adapt to a work setting, make work decisions, and perform

11

concentrated, task-oriented activities when he was clean, sober, and compliant with his medication (Tr. 339).  Furthermore, as the ALJ noted, Plaintiff utilized routine and conservative treatment for his mental health symptoms, did not require emergency room treatment or inpatient mental health treatment, and engaged in activities of daily living beyond that expected of an individual who is totally disabled (Tr. 15, 301-18, 323-40).  Indeed, Dr. Bedi found that, although Plaintiff complained of some irritability, anxiety, and anger, Plaintiff did well and was stable on his medications and did not need any inpatient treatment for his mental health symptoms (Tr. 285-96).

Based on the foregoing, the ALJ appropriately limited Plaintiff to performing simple, routine tasks and to occasional contact with the general public, supervisors, and other employees (Tr. 12-15).  In doing so, the ALJ accounted for Plaintiff's moderate difficulties in social functioning and in maintaining concentration, persistence, and pace.  *See* Tr. 311, 333.  The record supports only those limitations.  Accordingly, the ALJ properly considered Plaintiff's limitations and incorporated those limitations into the RFC to the extent they affected Plaintiff's ability to work.

Given the ALJ's proper assessment of Plaintiff's RFC, the ALJ then posed an accurate hypothetical to the VE that incorporated Plaintiff's limitations.  Indeed, when posing a hypothetical to the VE, the ALJ must pose an accurate hypothetical that takes into account all of the claimant's impairments.  *Wilson*, 284 F.3d at 1227; *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).  The ALJ is not, however, required to include findings in a hypothetical question not found to be supported by the record.  *See Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161

(11th Cir. 2004).  In this instance, the ALJ posed a hypothetical to the VE assuming an individual with Plaintiff's age, education, and past work experience and with the ability to perform a full range of physical work activity up to and including heavy work, provided that such work did not involve the performance of more than simple, routine tasks and did not require more than occasional contact with the general public, other employees, and supervisors (Tr. 52-53).  As explained above, these limitations based on Plaintiff's mental impairment were the only limitations supported by the evidence of record.  The ALJ therefore posed to the VE an appropriate hypothetical incorporating the limitations supported by the record.  In response, the VE found that, even with the noted limitations, Plaintiff maintained the ability to perform his past relevant work as a kitchen helper (Tr. 53).  As such, the ALJ found Plaintiff not disabled and his decision is supported by substantial evidence.

### C.     Credibility

Finally, Plaintiff contends that the ALJ erred by failing to make a proper credibility determination as to Plaintiff's subjective complaints of pain and based on Plaintiff's ability to perform daily activities.  In social security disability cases, credibility determinations fall within the province of the ALJ.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).  Typically, the ALJ makes credibility determinations regarding Plaintiff's subjective complaints of pain and must provide specific reasons for his credibility finding.  *Holt v. Sullivan*, 921 F.2d 1221,1223 (11th Cir. 1991); Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996).  To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity

of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225; *see* 20 C.F.R. §§ 404.1529, 416.929. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225.

In rendering his decision, the ALJ considered Plaintiff's complaints of pain and other symptoms at length and found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible (Tr. 12-15). To make this credibility determination, the ALJ properly considered the objective medical evidence, treatment history, and activities of daily living. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211-12 (11th Cir. 2005) (finding the ALJ properly considered the plaintiff's activities of daily living, the frequency of his symptoms, and the routine nature of his treatment in concluding that the plaintiff's subjective complaints were inconsistent with his testimony and the medical evidence of record). The medical evidence indicated that Plaintiff had both mental and physical impairments but that those impairments were treated conservatively and controlled by medication, counseling, and physical therapy and that Plaintiff functioned well when compliant with his treatment plan (Tr. 14, 253-99, 371-88). As detailed more fully above, in making his determination, the ALJ properly discussed this objective medical evidence and conservative treatment history and indicated why the findings supported his RFC finding and credibility determination (Tr. 12-15).

In addition, the ALJ discussed Plaintiff's activities of daily living in discrediting

14

Plaintiff's subjective complaints.  As the ALJ noted, Plaintiff prepared simple meals, shopped, took care of himself, performed household chores, managed his finances, and was cognitively able to drive (Tr. 15).  The ALJ further noted that Plaintiff performed work activity after the alleged onset date and continued part-time work after that time, which indicated that Plaintiff's daily activities, at least occasionally, were greater than what Plaintiff reported (Tr. 15).  Contrary to Plaintiff's assertion, an ALJ may consider a claimant's activities of daily living when discounting subjective complaints of pain.  20 C.F.R. §§ 404.1529(c)(3)(i), 426.929(c)(3)(i). Although an ALJ cannot make a finding of non-disability at step one based on daily activities, he may consider a claimant's daily activities at the fourth step of the evaluation process to determine RFC and ability to perform past relevant work and to discredit subjective complaints. *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. §§ 404.1529(c)(3)(i), 426.929(c)(3)(i). Here, the ALJ properly considered Plaintiff's activities of daily living in discrediting Plaintiff's subjective complaints of pain and in determining Plaintiff's RFC and ability to perform past relevant work.  The ALJ found that Plaintiff's ability take care of himself, drive, and perform part-time work indicated that Plaintiff maintained an ability to perform activities of daily living beyond the type expected of an individual who is totally disabled.  Given Plaintiff's activities of daily living, combined with the objective medical evidence and conservative treatment of Plaintiff's impairments, the ALJ properly found Plaintiff's subjective complaints not entirely credible and adequately articulated his reasons for doing so.

### IV.

Accordingly, for the foregoing reasons, it is

15

RECOMMENDED:

1.  The decision of the Commissioner be affirmed.

IT IS SO REPORTED in Tampa, Florida, on this 10th day of August, 2012.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge


**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*


Copies furnished to:
Hon. Steven D. Merryday
Counsel of Record